**THE LAW OFFICE OF**
**JACK FITZGERALD, PC**
JACK FITZGERALD (SBN 257370)
*jack@jackfitzgeraldlaw.com*
TREVOR M. FLYNN (SBN 253362)
*trevor@jackfitzgeraldlaw.com*
MELANIE PERSINGER (SBN 275423)
*melanie@jackfitzgeraldlaw.com*
Hillcrest Professional Building
3636 Fourth Avenue, Suite 202
San Diego, California 92103
Phone: (619) 692-3840
Fax: (619) 362-9555

*Counsel for Plaintiff and the Proposed Class*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANGERLIA MARTIN, on behalf of herself, all others similarly situated, and the general public,<br><br>    Plaintiff,<br><br>    v.<br><br>TRADEWINDS BEVERAGE COMPANY,<br><br>    Defendant. | Case No: 16-cv-09249<br><br><br>**OPPOSITION TO MOTION TO DISMISS COMPLAINT**<br><br><br>Date:      May 1, 2017<br>Time:      1:30 p.m.<br>Judge:     Hon. Philip S. Gutierrez<br>Location:  Courtroom 6A |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................. iii

INTRODUCTION.............................................................................................1

FACTS ..........................................................................................................1

ARGUMENT ...................................................................................................2

    I.      PLAINTIFF HAS STANDING...........................................................2

         A.    Plaintiff has Adequately Pled Reliance and Materiality..........................2

         B.    A Reasonable Consumer Would be Misled by "All Natural" in this Case ....................................................................................3

         C.    Plaintiff Has Standing to Assert Claims on All Eight Products ...............5

         D.    Plaintiff Has Standing for Injunctive Relief ...................................7

      1.    Plaintiff's Substantive Rights Continue to be Violated .....................7

      2.    Plaintiff has Class Standing................................................8

      3.    The Court Should Exercise Supplemental Jurisdiction Over Plaintiffs' Injunctive Relief Claims .................................................8

    II.     PLAINTIFF ADEQUATELY PLED VIOLATIONS OF THE UCL, FAL, CLRA AND BREACHES OF WARRANTY ...........................................9

         A.    Plaintiff's Allegations Satisfy the Heightened Pleading Standards for the UCL, FAL, and CLRA .................................................9

         B.    Plaintiff Adequately Pled Breach of Warranty .......................................11

    III.    PLAINTIFF PROVIDED SUFFICIENT PRE-FILING NOTICE ...................13

i

IV.   PRIMARY JURISDICTION DOES NOT APPLY TO BAR
      PLAINTIFF'S CLAIMS IN THIS CASE ........................................................ 14

      A.   There is No Imminent Rule Change ........................................ 14

      B.   Even Assuming FDA Considers Rule Change, Color Additives
           Would Not Be Part of that Consideration ................................ 16

V.    PLAINTIFF HAS ADEQUATELY PLED INJURY IN FACT ....................... 20

CONCLUSION ........................................................................................................ 21

ii

# <u>TABLE OF AUTHORITIES</u>

**<u>Cases</u>**

*Allen v. ConAgra Foods, Inc.*,
  2013 WL 4737421 (N.D. Cal. Sept. 3, 2013) ....................................................11

*Allen v. Hylands, Inc.*,
  2012 WL 1656750 (C.D. Cal. May 2, 2012) .....................................................12

*Anderson v. Jamba Juice Co.*,
  888 F. Supp. 2d 1000 (N.D. Cal. 2012) ..............................................................5

*Astiana v. Dreyer's Grand Ice Cream, Inc.*,
  2012 WL 2990766 (N.D. Cal. July 20, 2012) .....................................................6

*Astiana v. Hain Celestial Group, Inc.*,
  783 F.3d 753 (9th Cir. 2015).............................................................................14

*Brazil v. Dole Food Company, Inc.*,
  2013 WL 5312418 (N.D.Cal. September 23, 2013) .............................................6

*Brod v. Sioux Honey Ass'n, Co-op.*,
  927 F. Supp. 2d. 811 (N.D. Cal. 2013), aff'd, 609 F. App'x 415 (9th Cir. 2015)..............10

*Bronson v. Johnson & Johnson, Inc.*,
  2013 WL 1629191 (N.D. Cal. Apr. 16, 2013) ...................................................13

*Cal. Dep't of Health Servs. v. B & R Davis Fertilizers*,
  1994 WL 377788 (9th Cir. 1994)......................................................................8, 9

*Chabner v. United Omaha Life Ins. Co.*,
  225 F.3d 1042 (9th Cir. 2000)............................................................................10

*Cnty. of Santa Clara v. Astra USA, Inc.*,
  588 F.3d 1237 (9th Cir. 2009)............................................................................15

*Daly v. Viacom, Inc.*,
  238 F.Supp.2d 1118 (N.D. Cal. 2002) ...............................................................21

*Davel Commc'ns, Inc. v. Qwest Corp.*,
  460 F.3d 1075 (9th Cir. 2006)............................................................................15

*Decarlo v. Costco Wholesale Corporation*,
2015 WL 11822156 (S.D. Cal., 2015) ...................................................................21

*Dorsey v. Rockhard Labs., LLC*,
2014 WL 4678969 (C.D. Cal. Sept. 19, 2014) ........................................................6

*Forcellati v. Hyland's, Inc.*,
876 F. Supp. 2d 1155 (C.D. Cal. 2012) ...................................................................6

*Grinnel v. Charles Pfizer & Co.*,
274 Cal. App. 2d 424 (1969)..................................................................................12

*Ham v. Hain Celestial Group, Inc.*,
70 F. Supp. 3d 1188 (N.D. Cal. 2014) ...................................................................12

*Harris v. Las Vegas Sands L.L.C.*,
2013 WL 5291142 (C.D. Cal. Aug. 16, 2013).........................................................8

*Hauter v. Zogarts*,
14 Cal. 3d 104 (1975)......................................................................................12, 13

*Henderson v. Gruma Corp.*,
2011 WL 1362188 (C.D.Cal. Apr. 11, 2011) ..........................................................7

*Hinojos v. Kohl's Corp.*,
718 F.3d 1098 (9th Cir. 2013)...........................................................................2, 21

*In re ConAgra Foods, Inc.*,
90 F. Supp. 3d 919 (C.D. Cal. 2015) ..............................................................11, 12

*In re Tobacco II Cases*,
46 Cal.4th 298 (2009) .............................................................................................20

*Jones v. Nutiva, Inc.*,
2016 WL 5210935 (N.D.Cal. September 22, 2016) .................................................6

*Kane v. Chobani, LLC*,
645 F. App'x 593 (9th Cir. 2016) ....................................................................14, 15

*Karim v. Hewlett-Packard Co.*,
  311 F.R.D. 568 (N.D. Cal. 2015)..........................................................................12

*Kasky v. Nike, Inc.*,
  27 Cal. 4th 939 (2002) ........................................................................................10

*Kearns v. Ford Motor Co.*,
  567 F.3d 1120 (9th Cir. 2009)...............................................................................9

*Keith v. Buchanan*,
  173 Cal. App. 3d 13 (1985)..................................................................................12

*Kwikset Corp. v. Superior Court*,
  51 Cal.4th 310 (2011) .........................................................................................20

*Lee v. City of Los Angeles*,
  250 F.3d 668 (9th Cir. 2001)................................................................................11

*Lilly v. Jamba Juice Co.*,
  2015 WL 1248027 (N.D. Cal. Mar. 18, 2015)......................................................7

*Lockwood v. Conagra Foods, Inc.*,
  597 F.Supp.2d 1028 (N.D.Cal.,2009) ..................................................................15

*Mary Pickford Co. v. Bayly Bros., Inc.*,
  12 Cal. 2d 501 (1939)..........................................................................................11

*McKinnis v. Kellogg USA*,
  2007 WL 4766060 (C.D. Cal. September 19, 2007) ..............................................4

*Miller v. Ghirardelli Chocolate Co.*,
  912 F. Supp. 2d 861 (N.D. Cal. 2012) ...................................................................5

*Nagy v. Nagy*,
  210 Cal. App. 3d 1262 (1989)..............................................................................20

*NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*,
  693 F.3d 145 (2d Cir. 2012)...................................................................................8

*Neubronner v. Milken*,
  6 F.3d 666 (9th Cir. 1993).....................................................................................9

*Pelayo v. Nestle USA, Inc.*
 989 F.Supp.2d 973 (C.D.Cal.,2013) (Walter, J.) ..............................................................3, 4

*Red v. Kraft Foods, Inc.*,
 754 F. Supp. 2d 1137 (C.D. Cal. 2010) ..............................................................2

*Reed Elsevier v. Who's Who Worldwide Registry*,
 1994 U.S. Dist. LEXIS 4439 (E.D.N.Y. Mar. 8, 1994) ..............................................................9

*Reid v. Johnson & Johnson*,
 780 F.3d 952 (9th Cir. 2015)..............................................................2, 14

*Ries v. Arizona Beverages USA LLC*,
 287 F.R.D. 523 (N.D.Cal.,2012)..............................................................3, 7, 20

*Swearingen v. Yucatan Foods, L.P.*,
 59 F. Supp. 3d 961 (N.D. Cal. 2014) ..............................................................16

*Tsan v. Seventh Generation, Inc*,
 2015 WL 6694104 (N.D. Cal. Nov. 3, 2015) ..............................................................12

*Werdebaugh v. Blue Diamond Growers*,
 2013 WL 5487236 (N.D. Cal. Oct. 2, 2013)..............................................................5

*Williams v. Gerber Products Co.*,
 552 F.3d 934 (9th Cir. 2008)..............................................................5, 9, 10


**<u>Statutes</u>**

28 U.S.C. § 1367 ..............................................................8

Cal. Bus. & Prof. Code § 17200 ..............................................................9

Cal. Com. Code § 2313 ..............................................................12

Cal. Com. Code § 2313(1)(a) ..............................................................11

Cal. Com. Code § 2313(1)(b) ..............................................................11

Cal. Com. Code § 2314(2)(c) ..............................................................13

Cal. Com. Code § 2314(2)(f) ..............................................................13

Fed. R. Civ. P. 9(b) ..............................................................9

*Martin v. Tradewinds Beverage Company*, Case NO. 16-cv-09249
OPPOSITION TO MOTION TO DISMISS

**Treatises**

BLACK'S LAW DICTIONARY (8th ed. 2004) ............................................................................11

**Regulations**

80 Fed. Reg. 69905 ...................................................................................................17

81 Fed. Reg. 66562-01 ..............................................................................................16

*Martin v. Tradewinds Beverage Company*, Case NO. 16-cv-09249
OPPOSITION TO MOTION TO DISMISS

## INTRODUCTION

Tradewinds' motion should be denied. Plaintiff is a bona fide purchaser who has adequately pled reliance and injury. Tradewinds' primary jurisdiction argument ignores the reality of FDA's current efforts regarding "natural" food labeling rules, which have *nothing* to do with added colors. Defendant's remaining arguments regarding standing, lack of notice, and lack of reliance and injury miss the mark entirely and reflect several fundamental misunderstandings of California law. The Complaint explains in specific detail how Tradewinds' Iced Tea Products labels are misleading and how plaintiff, in being induced to purchase based on the false and misleading labels, was economically injured. Plaintiff's allegations also plausibly satisfy the tests for "unfair" behavior. The challenged statements also give rise to actionable claims for breach of express and implied warranty. Finally, plaintiff may pursue injunctive relief because her substantive right to freedom from a marketplace containing fraud continues to be abridged by Tradewinds' false advertising, because she has class standing for unaware absent class members, and because the Court can and should exercise supplemental jurisdiction over plaintiff's state law claims for injunctive relief.

## FACTS

Tradewinds touts several of its Iced Tea Products as "100% Natural," as containing "100% Natural Ingredients," and as made "With All Natural Ingredients." (Dkt. No. 1, "Compl." ¶ 9).[1] Well aware that "more than half of consumers usually seek out products with a 'natural' food label," that "consumers "equate 'natural' claims with healthier foods," and, most importantly, that "88% of [consumers] are willing to pay more for healthier foods," Tradewinds employs this marketing strategy "to convince consumers that its Iced Tea Products are all natural, even though they contain artificial caramel color" and, therefore, charge higher prices. (*Id.* ¶¶ 14-15).

---

[1] These claims are referred to collectively throughout as "All Natural" claims.

*Martin v. Tradewinds Beverage Company*, Case NO. 16-cv-09249
OPPOSITION TO MOTION TO DISMISS

However, "the term 'natural' means that nothing artificial or synthetic is present in the food product." (*Id.* ¶ 12). "According to FDA, 'all color additives regardless of source' are artificial or synthetic.'" (*Id.*) Because Tradewinds' Iced Tea Products contain caramel color, which is a color additive, the Iced Tea Products are not "All Natural." (*Id.* ¶¶ 11, 13).

Plaintiff purchased Tradewinds Iced Tea Products in reliance on Tradewinds objectively false label claims. (Id. ¶¶ 16-17). Plaintiff "was seeking an all-natural product, and relied on the Iced Tea Products' All Natural Claims to believe that what she was purchasing was all natural." (Id. ¶ 17). Tradewinds' "all natural" message was false and misleading, however, and plaintiff lost money as a result, having purchased a product at a higher price than she would have paid without the misleading label. (*Id.* ¶¶ 18-23.) Reasonable consumers were also misled because the "All Natural" claims are material. (*Id.* ¶ 14).

## ARGUMENT

## I.   PLAINTIFF HAS STANDING

### A.   Plaintiff has Adequately Pled Reliance and Materiality

"In a false advertising case, plaintiffs meet th[e] [standing] requirement if they show that, by relying on a misrepresentation on a product label, they 'paid more for a product than they otherwise would have paid, or bought it when they otherwise would not have done so.'" *Reid v. Johnson & Johnson*, 780 F.3d 952, 958 (9th Cir. 2015) (quoting *Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1104 (9th Cir. 2013)). Here, plaintiff alleges that she "was seeking an all-natural product," and that she "relied on the Iced Tea Products' All Natural Claims to believe that what she was purchasing was all natural." (Compl. ¶ 17). Plaintiff alleges that she "paid more for the Iced Tea Products, and would only have been willing to pay less, or unwilling to purchase them at all, absent the misleading All Natural Claims." (Compl. ¶ 22). "It hardly needs to be said that many courts have found similar allegations to be sufficient." *Red v. Kraft Foods, Inc.*, 754 F. Supp. 2d 1137, 1145 (C.D. Cal. 2010).

Finally, Plaintiff alleges that the "All Natural" claims are material in that consumers equate "natural" claims with healthier food and are willing to pay more for healthier food.

2

(Compl. ¶¶ 14-15). At least one California District Court has already found that "All Natural" claims on Iced Tea Products are material. *Ries v. Arizona Beverages USA LLC*, 287 F.R.D. 523, 531 (N.D.Cal.,2012) ("Although that is ultimately a question of fact, the representation that a beverage is 'All Natural' or '100% Natural' is likely to be material."). Thus, plaintiff adequately pled elements of materiality and reliance with the requisite particularity.

### B.   A Reasonable Consumer Would be Misled by "All Natural" in this Case

Tradewinds challenges plaintiff's claims on the basis that the Complaint supposedly "fails to plausibly allege that a 'reasonable consumer' would be deceived by the labeling in question." (Mot. at 14). Tradewinds urges the Court to dismiss plaintiff's claims since she supposedly did not define "all natural" and therefore did not allege sufficiently that a "reasonable consumer" would be misled. (*Id.*) In support of this argument, Tradewinds relies on *Pelayo v. Nestle USA, Inc.* In *Pelayo*, plaintiffs alleged various pasta food products were falsely advertised as "All Natural" because they contained several ingredients, including xanthan gum and soy lecithin, which plaintiff alleged were "synthetic" ingredients. *Pelayo v. Nestle USA, Inc.* 989 F.Supp.2d 973, 975-76 (C.D.Cal.,2013) (Walter, J.). Recognizing that the "question of whether a business practice is deceptive in most cases presents a question of fact not amenable to resolution on a motion to dismiss" the Court nevertheless found that no reasonable consumer could be misled by the term "All Natural" *in the context of that product packaging*. *Id*. at 978. The Court noted that plaintiff offered several, and conflicting, definitions of "All Natural" including a definition from Webster's Dictionary, meaning "produced or existing in nature," which the Court found particularly not applicable since "Pastas are not 'springing fully-formed from Ravioli trees and Tortellini bushes.'" *Id*. The plaintiff there, the Court found, failed "to allege that any of the Challenged Ingredients in Buitoni Pastas are 'artificial' as defined by the FDA." *Id*. at 979. Because the plaintiff in *Pelayo* could not allege that any federal regulation had specifically defined the phrase "All Natural" <u>in a way that would exclude the challenged ingredients</u>, it was unlikely that a reasonable consumer would be deceived by the use of the phrase. *Id*. at 979-80. In other words, nothing about the labeling on the Buitoni Pastas was false, even taking all plaintiff's

3

allegations as true, because plaintiff failed to plausibly allege that "All Natural" labeling precludes those foods which contain xantham gum, etc.

*Pelayo* is distinguishable from the present case in the most fundamental way, though, because here plaintiff *has* alleged a definition of "All Natural" as it applies to color additives. The definition is plausible because it's the definition used by FDA: "The Food and Drug Administration ('FDA') states that the term 'natural' means that nothing artificial or synthetic is present in the food product . . . [and] [a]ccording to FDA, 'all color additives regardless of source' are artificial or synthetic." (Compl. ¶ 12). FDA's regulation of the term "All Natural" as it applies here excludes the challenged ingredient, namely the color additive caramel, from the definition of "All Natural." This stands in fundamental contrast with *Pelayo*, in which the Court could rely on the fact that FDA has not specifically precluded the use of "All Natural" on a food product that contains xantham gum, soy lecithin, sodium citrate, maltodextrin, sodium phosphate, disodium phosphates, or ferrous sulfate. *Pelayo*, 989 F.Supp.2d at 979. It is undisputed that FDA *does* specifically preclude color additives from the definition of "All Natural," and therefore *Pelayo* does not apply.

Tradewinds' reliance on *McKinnis v. Kellogg USA* is equally misplaced. In that case, the plaintiffs alleged they were misled into believing "FROOT LOOPS" contained actual fruit because of the depiction of fruits on the product packaging. *McKinnis v. Kellogg USA*, 2007 WL 4766060, at *4 (C.D. Cal. September 19, 2007). The Court, found, however, that no reasonable consumer would mistake the trademark "FROOT LOOPS" as an ingredient list and, more importantly, "FDA regulations permit illustrations of fruit on product label to indicate that product's 'characterizing flavor,' even where the product contains no ingredients derived from the depicted fruit." *Id*. Most notably, the Court in *McKinnis* pointed out that even a product which otherwise comports with FDA regulations  but which "affirmatively mislead[s] the consumer by means of specific representations" could potentially violate the UCL and FAL. *Id*. Here, Tradewinds cannot point to an FDA regulation permitting its behavior with respect to the labeling of its Iced Tea Products and, on the contrary, plaintiff has pointed out the applicable provisions of FDA regulation which Tradewinds has violated.

*Martin v. Tradewinds Beverage Company*, Case NO. 16-cv-09249
OPPOSITION TO MOTION TO DISMISS

Tradewinds argument that "allegations of misrepresentation are also implausible when considering the label as a whole" should also be rejected. (Mot. at 15). Tradewinds relies exclusively on notion that because "the back label of each Tradewinds product at issue here lists all the ingredients contained in said products, including coloring-related ingredients," the label cannot possible be misleading. (*Id.*). However, Tradewinds misapprehends applicable Ninth Circuit law. Indeed, as the Ninth Circuit succinctly stated it: "We do not think that the FDA requires an ingredient list so that manufacturers can mislead consumers and then rely on the ingredient list to correct those misinterpretations and provide a shield for liability for the deception. Instead, reasonable consumers expect that the ingredient list contains more detailed information about the product that confirms other representations on the packaging." *Williams v. Gerber Products Co.*, 552 F.3d 934, 936 (9th Cir. 2008).

### C.    Plaintiff Has Standing to Assert Claims on All Eight Products

Plaintiff purchased three flavors of Tradewinds Iced Tea Products in the relevant time period: Sweet Tea, Lemon Tea, and Raspberry Tea. Tradewinds argues that because she didn't specifically purchase the five other flavors (Extra Sweet, Unsweet, Unsweet with Hint of Lemon, Unsweet with Hint of Raspberry, and Unsweet with Hint of Peach) she has no Article III standing to pursue claims on behalf of purchasers of those products.

In the Ninth Circuit, "[t]here is no controlling authority on whether [p]laintiffs have standing for products they did not purchase." *Miller v. Ghirardelli Chocolate Co.*, 912 F. Supp. 2d 861, 868 (N.D. Cal. 2012). While some district courts have held that a plaintiff lacks standing to assert such claims and others reserve the issue until a motion for class certification, "[t]he majority of the courts that have carefully analyzed the question hold that a plaintiff may have standing to assert claims for unnamed class members based on products he or she did not purchase so long as the products and alleged misrepresentations are substantially similar." *Id.* at 869; see also *Werdebaugh v. Blue Diamond Growers*, 2013 WL 5487236 (N.D. Cal. Oct. 2, 2013). If the products are sufficiently similar, "any concerns regarding material differences in the products can be addressed at the class certification stage." *Anderson v. Jamba Juice Co.*, 888 F. Supp. 2d 1000, 1006 (N.D. Cal. 2012).

5

Accordingly, courts frequently reserve this analysis for class certification. *See*, *e.g.*, *Dorsey v. Rockhard Labs., LLC*, 2014 WL 4678969, at *3-4 (C.D. Cal. Sept. 19, 2014) ("The Court will revisit this issue at the class certification stage in determining whether a class can be certified and, if so, the contours of that class," but "it appears that Plaintiff's claims are sufficiently similar to those of the putative class members who purchased a different iteration . . . to potentially allow him to represent them in this class action."); *Forcellati v. Hyland's, Inc.*, 876 F. Supp. 2d 1155, 1161 (C.D. Cal. 2012) ("Defendants' argument is better taken under the lens of typicality or adequacy of representation").

Some courts have addressed the issue at the pleading stage. If the Court undertakes the analysis now, there is no question the Court should find that the products are all substantially similar. Courts find "substantial similarity where (1) the products are physically similar; (2) the differences between the products are immaterial because the legal claim and injury to the customer is the same; and (3) both the products and the legal claims and injury are similar." *Jones v. Nutiva, Inc.*, 2016 WL 5210935, at *4 (N.D.Cal. September 22, 2016) (citation omitted). The purchased and unpurchased products at issue here weigh heavily in permitting standing under all three factors. Each of the five Iced Tea products plaintiff did not purchase are physically similar to one or more that *were* purchased – indeed, except for small variations in *flavor* only, they are identical. Tradewinds injured purchasers of each Iced Tea Product through the same behavior: labeling the Iced Tea Products with "All Natural" claims despite they contain the same artificial color additive: caramel. (Compl. ¶¶ 8-9). *See Brazil v. Dole Food Company, Inc.*, 2013 WL 5312418, at *7 (N.D.Cal. September 23, 2013) ("claims that [plaintiff] was misled by the improper use of the term 'all natural' on Dole Mixed Fruit in Cherry Gel," and "the injury he suffers as a result of that misrepresentation is not meaningfully distinguishable from the injury suffered by an individual who is misled by the use of the term 'all natural' on Dole Mixed Fruit in Black Cherry or Peach"); *Astiana v. Dreyer's Grand Ice Cream, Inc.*, 2012 WL 2990766, at *13 (N.D. Cal. July 20, 2012).

*Martin v. Tradewinds Beverage Company*, Case NO. 16-cv-09249
OPPOSITION TO MOTION TO DISMISS

### D.    Plaintiff Has Standing for Injunctive Relief

Tradewinds challenges plaintiff's standing to pursue injunctive relief "because she has failed to allege that she intends to purchase the allegedly offending Tradewinds' iced tea products in the future." (Mot. at 8). Alternatively, Tradewinds argues that because plaintiff is now aware that Tradewinds falsely advertised its Iced Tea Products as "All Natural," she cannot be fooled again and, therefore, there is no prospect for future injury. (Mot. at 9).

These precise arguments were considered and rejected in the context of "All Natural" labeling claims on iced tea products in *Ries, supra*, 287 F.R.D.at 533 (finding Article III standing for injunctive relief even where consumer has ceased purchasing iced tea product and they were now aware of deceptive labeling).

### 1.    Plaintiff's Substantive Rights Continue to be Violated

As plaintiffs in *Ries* argued, and the Court agreed, "were the Court to accept the suggestion that plaintiffs' mere recognition of the alleged deception operates to defeat standing for an injunction, then injunctive relief would never be available in false advertising cases, a wholly unrealistic result." *Id.* at 533-34. (citing *Henderson v. Gruma Corp.*, No. 10–04173, 2011 WL 1362188 at *7 (C.D.Cal. Apr. 11, 2011) ("If the Court were to construe Article III standing for FAL and UCL claims as narrowly as the Defendant advocates, federal courts would be precluded from enjoining false advertising under California consumer protection laws because a plaintiff who had been injured would always be deemed to avoid the cause of the injury thereafter ('once bitten, twice shy') and would never have Article III standing."). Because the substantive right conferred by the statute includes freedom from exposure to fraud in the marketplace, Tradewinds' ongoing false advertising campaign is sufficient injury to satisfy the redressability aspect of Article III. Even aware of the deception, plaintiffs' continued exposure to fraud and inability to trust the veracity of Tradewinds' labeling presents a "real and immediate threat of future injury," allowing them to seek to enjoin the violation. *See Lilly v. Jamba Juice Co.*, 2015 WL 1248027, at *5 (N.D. Cal. Mar. 18, 2015).

### 2.   Plaintiff has Class Standing

In addition, as putative class representative, plaintiff has class standing to seek injunctive relief. Absent class members, unaware though they are—because of their unawareness—have standing to seek injunctive relief, which is imparted on plaintiffs as their representatives. *See NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*, 693 F.3d 145, 162 (2d Cir. 2012), *cert. denied*, 133 S. Ct. 1624 (2013); *Harris v. Las Vegas Sands L.L.C.*, 2013 WL 5291142, at \*4 (C.D. Cal. Aug. 16, 2013) (

> [I]n class actions, . . . plaintiffs seek "to represent broader interests than [their] own." . . . . The very existence of class actions creates a certain "tension" with the standing doctrine. . . . between adequacy of representation and standing . . . [and] between standing and mootness[]. The same type of tension exists in consumer class actions seeking prospective relief. While a consumer must have been injured to have standing to bring a claim under a consumer protection statute in the first instance, a lead plaintiff need not allege that he will willingly subject himself to future misconduct, or that he will be fooled by false advertising he now knows to be false, in order to seek injunctive relief on behalf of a class. Because some members of the class do not have the same knowledge as Plaintiff now does, there is a likelihood of repeat injury for the class as a whole, and on the basis of "class standing," the claims may proceed. (internal citations omitted)).

### 3.   The Court Should Exercise Supplemental Jurisdiction Over Plaintiffs' Injunctive Relief Claims

Section 1367(a) provides that "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." 28 U.S.C. § 1367(a). Supplemental jurisdiction over plaintiffs' claims for injunctive relief under state law "is appropriate pursuant to 28 U.S.C. § 1367(a)," *Cal. Dep't of Health Servs. v. B & R Davis Fertilizers*, 1994 WL 377788,

at *2 (9th Cir. 1994). Here, Tradewinds has not disputed that the Court has original jurisdiction over plaintiff's monetary claims, or that her claims for injunctive relief "form part of the same case or controversy," since they "derive from a common nucleus of operative fact." Thus, the court can and should exercise its supplemental jurisdiction over plaintiff's claims for injunctive relief. *See Cal. Dep't of Health Servs.*, 1994 WL 377788, at *2; *Reed Elsevier v. Who's Who Worldwide Registry*, 1994 U.S. Dist. LEXIS 4439, at *3 (E.D.N.Y. Mar. 8, 1994) ("Federal courts are given supplemental jurisdiction over" state law claim for injunctive relief).

## II.   PLAINTIFF ADEQUATELY PLED VIOLATIONS OF THE UCL, FAL, CLRA AND BREACHES OF WARRANTY

Tradewinds contends that plaintiff failed to plead her complaint with sufficient particularity because  she fails to "supply the 'how' and 'when' with any degree of specificity" and also "fails to plead the elements of reliance and materiality." (Mot. at 17-18). Tradewinds also contends that plaintiff failed to plead breach of warranty. (Mot. at 19).

### A.   Plaintiff's Allegations Satisfy the Heightened Pleading Standards for the UCL, FAL, and CLRA

Federal Rule of Civil Procedure 9(b) heightens pleading requirements for all claims that "sound in fraud" or are "grounded in fraud." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009) (citation omitted); Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."). "[The Ninth Circuit] has interpreted Rule 9(b) to require that allegations of fraud are specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Neubronner v. Milken*, 6 F.3d 666, 671 (9th Cir. 1993) (internal quotation marks and citation omitted).

California's UCL prohibits any "unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200. To plead a claim under the UCL's "fraudulent" prong, a plaintiff must plausibly allege that the

9

defendant's product claims are false or misleading. *Williams v. Gerber Prods., Co.*, 552 F.3d 934, 938 (9th Cir. 2008). The UCL's "unfair" prong prohibits "not only advertising which is false, but also advertising which, although true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public." *Id.* (quoting *Kasky v. Nike, Inc.*, 27 Cal. 4th 939, 951 (2002), as modified (May 22, 2002)); *Brod v. Sioux Honey Ass'n, Co-op.*, 927 F. Supp. 2d. 811, 828 (N.D. Cal. 2013), aff'd, 609 F. App'x 415 (9th Cir. 2015). The UCL's "unlawful" prong incorporates other laws and treats violations of those laws as unlawful business practices independently actionable under state law. *Chabner v. United Omaha Life Ins. Co.*, 225 F.3d 1042, 1048 (9th Cir. 2000). California's CLRA prohibits any "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer." Cal. Civ. Code § 1770. The FAL prohibits any "untrue or misleading" advertising. Cal. Bus. & Prof. Code § 17500. A violation of the FAL "necessarily violates the UCL." *Kasky.*, 27 Cal. 4th at 950.

UCL, CLRA, and FAL claims are all governed by the "reasonable consumer" test. *Williams*, 552 F.3d at 938. Thus, to state a claim, plaintiff must plausibly plead that "members of the public are likely to be deceived." *Id.* (quotations and citations omitted). "California courts . . . have recognized that whether a business practice is deceptive will usually be a question of fact not appropriate for decision on demurrer." *Williams*, 552 F.3d at 938. It is a "rare situation" when "granting a motion to dismiss [a UCL claim] is appropriate." *Id.* at 939.

This case does not present that "rare situation." Plaintiff alleges that Tradewinds advertised its Iced Tea Products as "All Natural," that representation was false, that she relied on the misrepresentation in deciding to purchase the Iced Tea Products, and that she lost money as a result. (Compl. ¶¶ 17-19). Plaintiff also alleges that she began purchasing the Iced Tea Products beginning in 2014 and that she regularly purchased the products at the Ralphs located at 2270 North Lake Avenue, in Altadena, California 91001; the Vons located at 655 North Fair Oaks Avenue, in Pasadena, CA 91103; or the Smart and Final located at 401 North Fair Oaks Avenue, in Pasadena, CA 91103 (*id.* ¶ 16). Tradewinds arguments that because

10

plaintiff did not include more pictures in her complaint (Mot. at 3; 17) and that because she did not plead on what specific day she made her purchases (Mot. at 18), her complaint should be dismissed, should be rejected. Tradewinds attempts to introduce extrinsic evidence that "the packaging in question changed during the relevant period" should also be rejected. *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) ("As a general rule, 'a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion'").

## B.    Plaintiff Adequately Pled Breach of Warranty

A warranty is a guarantee by a contracting party that something contemplated by the contract has a particular character or quality; the promising party in effect insures the other against the possibility that the thing is not as warranted. *See Mary Pickford Co. v. Bayly Bros., Inc.*, 12 Cal. 2d 501, 520 (1939) ("The obligation of a warranty is absolute, and is imposed as a matter of law irrespective of whether the seller knew or should have known of the falsity of his representations."). The elements of a claim for breach of warranty are: "(1) the seller's statements constitute an affirmation of fact or promise or a description of the goods; (2) the statement was part of the basis of the bargain; and (3) the warranty was breached." *In re ConAgra Foods, Inc.*, 90 F. Supp. 3d 919, 984 (C.D. Cal. 2015) (quotation omitted); *see also* Cal. Com. Code §§ 2313(1)(a)-(b). "[A] warranty is conclusively presumed to be material," BLACK'S LAW DICTIONARY (8th ed. 2004), at 1618. Plaintiff alleges Tradewinds made the same warranty to every class member, i.e., that the Iced Tea Products are "All Natural" and that "[t]hese and other representations were 'part of the basis of the bargain'" (Compl. ¶ 62). Plaintiff alleges she relied upon these representations (*id.*) and that Tradewinds breached its express warranties by selling a product that is not "All Natural." (*Id.* ¶ 63). Thus, plaintiff has sufficiently alleged a breach of express warranty. *See Allen v. ConAgra Foods, Inc.*, 2013 WL 4737421, at *11 (N.D. Cal. Sept. 3, 2013) ("Courts in this district have previously found that plaintiffs stated express warranty claims based on allegedly misleading food labeling.").

Tradewinds asserts, however, that because plaintiff supposedly fails to "plead plausibly a 'reasonable consumer standard' for a labeling term, such as 'natural,' [she] also fails to plausibly plead the reliance and non-compliance elements of an express warranty claim." (*See*

11

Mot. at 19). First, plaintiff "need not establish reliance as an element of [her] express warranty claim," and she "need not establish reliance on a classwide basis." *See Karim v. Hewlett-Packard Co.*, 311 F.R.D. 568, 573 (N.D. Cal. 2015); *see also ConAgra*, 90 F. Supp. 3d at 984 ("Proof of reliance on specific promises or representations is not required" for breach of warranty claim.); *Hauter v. Zogarts*, 14 Cal. 3d 104, 115 (1975) ("Whereas plaintiffs in the past have had to prove their reliance upon specific promises made by the seller . . . the Uniform Commercial Code requires no such proof." (citing *Grinnel v. Charles Pfizer & Co.*, 274 Cal. App. 2d 424, 440 (1969))).

    Even if reliance were still required under California law, for the same reasons set forth, *supra*, in Section I(b), plaintiff has adequately pled reliance on the "All Natural" claim. Plaintiff alleges that "All Natural" is false and misleading because of the color additive present in the Iced Tea Products. Moreover, "[t]he determination as to whether a particular statement is an expression of opinion or an affirmation of fact is often difficult, and frequently is dependent upon the facts and circumstances existing at the time the statement is made." *Keith v. Buchanan*, 173 Cal. App. 3d 13, 21 (1985). Accordingly, "[c]ourts liberally construe sellers' affirmations of quality in favor of injured consumers." *Allen v. Hylands, Inc.*, 2012 WL 1656750, at *3 (C.D. Cal. May 2, 2012). Contrary to Tradewinds' argument, a statement that a product is "All Natural" is specific and unequivocal where "All Natural" has already been defined by FDA as a food product that does not contain added colors. Thus, plaintiff has alleged facts that, taken as true, demonstrate Tradewinds Iced Tea are *not* "All Natural" where they contain added colors. Thus, Tradewinds' motion should be "denied for the same reasons as the consumer protection and misrepresentation-based claims addressed above." *Ham v. Hain Celestial Group, Inc.*, 70 F. Supp. 3d 1188, 1195 (N.D. Cal. 2014); *see also Tsan v. Seventh Generation, Inc*, 2015 WL 6694104, at *7 (N.D. Cal. Nov. 3, 2015) (denying motion to dismiss breach of warranty claims where "[t]he Court has already rejected the contention that Plaintiffs' allegations do not plausibly meet the reasonable consumer standard as a matter of law").

12

Tradewinds' argument regarding plaintiffs' implied warranty claim is also unavailing. (*See* Mot. at 21-22.) "The California Supreme Court has explained that '[m]erchantability has several meanings, two of which are relevant to the instant case: the product must '[conform] to the promises or affirmations of fact made on the container or label,' and must be 'fit for the ordinary purposes for which such goods are used.'" *In re Ferrero Litigation*, 794 F.Supp.2d 1107, 1118 (S.D.Cal.,2011*) (quoting *Hauter v. Zogarts*, 14 Cal. 3d 104, 118 (1975) (*citing* Cal. Com. Code § 2314(2)(c), (f))). Here, Tradewinds incorrectly assumes plaintiff challenges Tradewinds Iced Tea "fitness for the ordinary purpose" (*see* Mot. at 19-20 (citation omitted)). To the contrary, "[p]laintiff[] [is] bringing [her] claim under a different definition of merchantability, whether the product conforms with 'the promises or affirmations of fact made on the container or label.' Cal. Com. Code § 2314(2)(f)." *See In re Ferrero*, 794 F. Supp. 2d at 1118. Tradewinds has presented no valid challenge to plaintiff's implied warranty claims. "Where plaintiffs challenge food labels that are not preempted by Federal law and are otherwise allowed, courts refrain from dismissing implied warranty claims." *Bronson v. Johnson & Johnson, Inc.*, 2013 WL 1629191, at *12 (N.D. Cal. Apr. 16, 2013).

## III.   PLAINTIFF PROVIDED SUFFICIENT PRE-FILING NOTICE

Tradewinds argues that the "Complaint should be dismissed in its entirety as a matter of law because Plaintiff is 'barred from any remedy' by her failure to comply with the pre-filing notice obligation imposed on her by UCC section 2607(A)(3)." (Mot. at 10). Tradewinds' argument is wholly inexplicable. Plaintiff filed her complaint on December 14, 2016. However, more than two months prior, on October 6, 2016, plaintiff sent, via certified mail, return-receipt requested, a detailed letter setting forth the facts and legal theories that plaintiff eventually included in her complaint, including that Tradewinds was in violation of the CLRA, the UCL and breached express and implied warranties. (Flynn Decl. ¶ 2; Ex. 1). The notice letter set forth each salient fact, including that because each of the Iced Tea Products "contain artificial coloring, namely, caramel color, which is not a natural ingredient, rendering the product not all natural, not 100% natural and not containing all-natural

13

ingredients," Tradewinds "falsely advertises and markets its Iced Tea Products." (Id.). Plaintiff put Tradewinds on notice that it had 30 days to "correct, repair, replace, or otherwise rectify the Tradewinds Iced Tea advertising and labeling" or else plaintiff would sue. (Id.). The US Postal Service confirmed that Tradewinds received the notice letter. (Flynn Decl. ¶3; Ex. 2). Remarkably, Tradewinds cannot deny receiving the notice because it *responded in writing,* denying liability and calling plaintiff's claims "fundamentally flawed." (Flynn Decl. ¶4; Ex. 3).

Tradewinds argument is even more bizarre because plaintiff specifically alleged that she provided adequate pre-filing notice in her complaint: "Plaintiff notified Tradewinds of the breach prior to filing, but Tradewinds failed to rectify the breach." (Compl. ¶ 65).

## IV.  PRIMARY JURISDICTION DOES NOT APPLY TO BAR PLAINTIFF'S CLAIMS IN THIS CASE

Utilizing a particularly broad brush, Tradewinds paints FDA's comment-seeking period, which closed nearly a year ago, regarding the term "natural" as a total bar to plaintiff's claims and urges the Court to exercise its discretion to dismiss the complaint (Mot. at 3-5), despite that the Ninth Circuit's decision in *Kane v. Chobani, LLC*, 645 F. App'x 593, 594-95 (9th Cir. 2016), relied upon heavily by Tradewinds, specifically overturned that portion of the District Court that dismissed the complaint, instead finding that staying that case was most appropriate. However, here, neither dismissal nor a stay is warranted.

First, there is no imminent rule change with respect to "all natural" claims in general – FDA has only solicited comments and that comment period ended nearly a year ago. Second, a thorough analysis of FDA's position with respect to added colors, even assuming FDA will eventually define "all natural," demonstrates there is not a single indication that FDA intends to ever alter its position that "all natural" precludes any and all added colors, regardless of source.

### A.  There is No Imminent Rule Change

Primary jurisdiction referral in food cases is highly disfavored where the FDA does not appear imminently about to resolve an question that is key to the litigation.; *See Reid*, 780

14

F.3d at 967 (primary jurisdiction inappropriate where "case ultimately turns on . . . whether a reasonable consumer would be misled"); *Astiana v. Hain Celestial Group, Inc.*, 783 F.3d 753, 760-61 (9th Cir. 2015) ("primary jurisdiction is not required when a referral to the agency would significantly postpone a ruling that a court is otherwise competent to make"); *Chacanaca v. Quaker Oats Co*., 752 F.Supp.2d 1111, 1124 (N.D.Cal. October 14, 2010) ("[P]laintiffs advance a relatively straightforward claim: they assert that defendant has . . . marketed a product that could mislead a reasonable consumer. As courts faced with state-law challenges in the food labeling arena have reasoned, this is a question 'courts are well-equipped to handle.'" (quoting *Lockwood v. Conagra Foods, Inc.*, 597 F.Supp.2d 1028, 1035 (N.D.Cal.,2009) ("every day courts decide whether conduct is misleading"))).

At the motion to dismiss stage, when deciding whether to defer jurisdiction, courts must "apply a standard derived from Rule 12(b)(6) jurisprudence: whether the complaint plausibly asserts a claim that would not implicate the doctrine." *Cnty. of Santa Clara v. Astra USA, Inc.*, 588 F.3d 1237, 1251-52 (9th Cir. 2009) (declining to invoke primary jurisdiction where action could "plausibly be adjudicated" without agency's expertise (citations omitted)), *rev'd on other grounds sub nom.*, 131 S. Ct. 1342 (2011); *accord Davel Commc'ns, Inc. v. Qwest Corp.*, 460 F.3d 1075, 1088 (9th Cir. 2006) (Where "the allegations of the complaint do not necessarily require the doctrine's applicability, then the primary jurisdiction doctrine may not be applied on a motion to dismiss . . . .")

Tradewinds nevertheless claims that dismissal, not even a stay, is mandated because "the central issues in this case . . . is, at this very moment, being deliberated in a formal rulemaking process by the FDA, the federal agency vested with jurisdiction over this issue." (Mot. at 3-4). Tradewinds, however, fails to explain itself. Plaintiff has found nothing indicating that FDA is considering a rule change as claimed by Tradewinds, which offers nothing except conclusory argument.

Tradewinds conflates the ideas of soliciting public comment with actual rulemaking. This is evidenced by its over-reliance on *Kane*, *supra*. The Court in *Kane* specifically based its decision to stay that case because, and only because, "FDA represented that it expects to

15

issue final guidance on the term 'evaporated cane juice' **by the end of 2016**." *Kane*, 645 Fed. Appx. at 594 (emphasis added). With respect to "all natural" claims, generally, FDA has merely sought public comment and, after nearly a year since that comment period has closed, has taken no action, and has not indicated it intends to take any action. "[I]nvit[ing] public comment," in response to "reciev[ing] a citizen petition," *see* 81 Fed. Reg. at 66562-01, is a far cry from "deliberat[ion] in a formal rulemaking process" like the FDA action in *Kane*, on which Tradewinds relies (Mot. at 3-5), where the comment period on the FDA's draft guidance had already closed and the FDA expected a resolution in less than a year from the Ninth Circuit's ruling. *Compare Swearingen v. Yucatan Foods, L.P.*, 59 F. Supp. 3d 961, 964 (N.D. Cal. 2014) (noting that it and other courts had previously declined to apply the primary jurisdiction doctrine to "evaporated cane juice" claims despite that the FDA had issued draft guidance on the issue because "FDA ha[d] not yet finalized the draft guidance"). This is particularly true with respect to color additives specifically which, for the reasons explained below, the FDA has *never* indicated its intent to consider changing its longstanding policy on.

### B.   Even Assuming FDA Considers Rule Change, Color Additives Would Not Be Part of that Consideration

FDA defines a color additive as:

> "any substance that imparts color to a food, drug, cosmetic, or to the human body. Color additives include both synthetic substances and substances derived from natural sources. Color additives may be used in food to enhance natural colors, add color to colorless and 'fun' foods such as cake decorations, and help identify flavors (such as purple for grape flavor or yellow for lemon). Color additives are sometimes called food dyes."[2]

FDA has made it clear, and continues to make it clear, that even when a color added to food is from a natural source, it is still considered a color additive, and that "FDA has considered the term 'natural' to mean that nothing artificial or synthetic (***including all color***

---

[2] http://tinyurl.com/n2n8cgr (FDA Color Additives: Questions and Answers for Consumers)

*Martin v. Tradewinds Beverage Company*, Case NO. 16-cv-09249
OPPOSITION TO MOTION TO DISMISS

*additives regardless of source*) has been included in, or has been added to, [food]."[3] FDA's position with respect to color additives precluding a label claiming the food is "all natural" has not changed, FDA has not said it will change, and there is no extrinsic indication that it will ever change. Indeed, even despite seeking public comments on "all natural," FDA continues to object to the declaration of any added color as "natural."[4]

Tradewinds urges the Court to ignore the details, and broadly rely, as it has, on the fact that starting around November 2015, FDA solicited public comments regarding the use of the term "natural" in connection with food product labeling. *See Use of the Term "Natural" in the Labeling of Human Food Products; Request for Information and Comments*, 80 Fed. Reg. 69,905 (Nov. 12, 2015). However, what Tradewinds ignores is that actual analysis of the petitions and subsequent FDA action (or non-action in this case), reveals that color additives are off the table and their use will continue to disqualify such food from being labeled "all natural" regardless of what the FDA *may* do in the near or distant future. In FDA's own words with respect to the potential rule change, in relevant part:

> The Food and Drug Administration (FDA or we) is announcing the establishment of a docket to receive information and comments on the use of the term "natural" in the labeling of human food products, including foods that are genetically engineered or contain ingredients produced through the use of genetic engineering.
>
> . . .
>
> We have a longstanding policy for the use of the term "natural" on the labels of human food. We previously considered establishing a definition for the term "natural" when used in food labeling. In the preamble of a proposed rule we published in the Federal Register (56 FR 60421, November 27, 1991), we stated that the word "natural" is often used to convey that a food is composed only of substances that are not manmade and is, therefore, somehow more wholesome. We also said that we have not attempted to restrict use of the term "natural" except for added color, synthetic substances, and flavors under § 101.22 (21 CFR 101.22) (56 FR 60421 at 60466). Further, we said that we

---

[3] http://tinyurl.com/lle4z7q (FDA Guidance Regulation) (emphasis added)
[4] http://tinyurl.com/mtwue4c (Label Declaration of Certification-Exempt Color Additives)

have considered "natural" to mean that nothing artificial or synthetic (including colors regardless of source) is included in, or has been added to, the product that would not normally be expected to be there (56 FR 60421 at 60466)

. . .

We stated that at that time we would not be engaging in rulemaking to define "natural," but that we would maintain our policy not to restrict the use of the term "natural" except for added color, synthetic substances, and flavors. We further stated that we would maintain our policy to interpret the term "natural" as meaning that "nothing artificial or synthetic (including all color additives regardless of source) has been included in, or has been added to, a food that would not normally be expected to be in the food" (58 FR 2302 at 2407).[5]

Since at least 1991, FDA has considered any food that contains added color, from whatever source, to be ineligible to be labeled "all natural." Although it sought comments in 1991, FDA elected to not set a definition *except* for that specific limitation. In 2015, FDA again sought comments because it received three Citizen Petitions asking that the agency actually define the term "natural" for use in food labeling and one Citizen Petition asking to ban the use of "all natural" claims entirely. Importantly, that comment period ended May 10, 2016 and FDA still hasn't indicated that it intends to even formally discuss a rule change, let alone that a rule change is forthcoming (as it did with respect to "evaporated cane juice" discussed in *Kane, supra*). Substantively, even if FDA *were* contemplating a rule change, which, after a whole year strongly begs the question, there is no indication that FDA would change its long standing policy to prohibit "all natural" claims on foods that have added color.

That FDA will not consider altering its 20 year ban on color additives being considered "All Natural" is evidenced by a review of the four petitions which precipitated comment solicitation; Those four petitions are summarized by FDA on its website[6] which are more acutely summarized as follows:

---

[5] http://tinyurl.com/m2dsq6e (Federal Register: Use of the Term "Natural" in the Labeling of Human Food Products)
[6] *Id.*

*Martin v. Tradewinds Beverage Company*, Case NO. 16-cv-09249
OPPOSITION TO MOTION TO DISMISS

- Petition 1: Grocery Manufacturers Association ("GMA") requested that FDA "issue a regulation authorizing statements such as 'natural' on foods that are or contain foods derived from biotechnology." Specifically, GMA requested that FDA issue a regulation "that it is neither false nor misleading to label a food as 'natural' or similar terms solely because the food is or contains a food derived from biotechnology."

- Petition 2: Consumers Union  requested that FDA prohibit use of the term "natural" on food labels altogether. The Consumers Union citizen petition asserts that there is a "drastic" difference between FDA's current policy for use of the term "natural" and "what people think the 'natural' label should mean." More specifically, Consumers Union petition requests that FDA issue the following interpretive rule prohibiting use of the term "natural" in food labeling: "The term 'natural,' or any derivation of the term, such as 'naturally grown,' 'naturally sourced' or 'from nature,' is vague and misleading and should not be used."

- Petition 3: Sara Lee Corp. asks that FDA work with USDA's Food Safety Inspection Service (FSIS) to devise and adopt a unified policy, as a statement of policy, governing use of the term "natural" such that use of the term "natural" may be used to describe a food or food ingredient that does not contain any artificial flavor or flavoring, *coloring ingredient (regardless of source)*, or any artificial or synthetic ingredient that is included within or not normally expected in the product. Further, the Sara Lee Corp. requests that FDA consider the degree of processing necessary to produce the food or food ingredient in determining consumer expectation.

- Petition 4: The Sugar Association asks that FDA asks only for consistency across Federal Agencies with respect to the definition of "natural" and requested that FDA define the term "natural" based on the definition already adopted by the Food Safety and Inspection Services in its Food Standards and Labeling Policy Book for

19

"natural" claims for meat products and poultry products. That is, the Sugar Association seeks a definition of "natural claims" that, in relevant part, states that the term "natural" may be used on labeling for meat products and poultry products if the applicant for such labeling demonstrates that: (1) The product does not contain any artificial flavor or flavoring, *coloring ingredient*, chemical preservative (as defined in § 101.22), or any other artificial or synthetic ingredient and (2) the product and its ingredients are not more than minimally processed.

It is abundantly clear that FDA, even assuming it defines "all natural" someday, will never consider added colors to qualify as natural. As a result, the Court should not exercise its discretion to stay this case.

## V.   PLAINTIFF HAS ADEQUATELY PLED INJURY IN FACT

Tradewinds argues that plaintiff "does not plausibly allege an injury." (Mot. at 16). But as Tradewinds itself points out, plaintiff alleged that she "would only have been willing to pay less" for the products in question "or unwilling to purchase them at all" had she known that they were not "natural." (Compl. ¶22); (Mot. at 16).

 "Section 17204 provides a private individual may bring suit only if he or she has 'suffered injury in fact and has lost money or property as a result of the unfair competition.'" *Ries*, 287 F.R.D. at 529. The California Supreme Court has thus interpreted Section 17204 to require a representative plaintiff to plead and prove an injury in fact—e.g., the loss of money or property—and "actual reliance" on the alleged fraudulent conduct. *In re Tobacco II Cases*, 46 Cal.4th 298, 327 (2009); see also *Kwikset Corp. v. Superior Court*, 51 Cal.4th 310, 316 (2011) ("[i]f a party has alleged or proven a personal, individualized loss of money or property in any non-trivial amount, he or she has also alleged or proven injury in fact" under the UCL and CLRA).

Tradewinds argument that plaintiff's allegations regarding damages are conclusory and not plausible significantly misconstrues California law. Tradewinds' reliance on *Nagy v. Nagy* highlights this lack of understanding. In *Nagy*, the Court found that a non-biological parent developing a close relationship with a child misrepresented to be his and performing

20

parental acts is not an economic "damage" which should be compensable. *Nagy v. Nagy*, 210 Cal. App. 3d 1262, 1269–70 (1989). Tradewinds' reliance on *Daly v. Viacom, Inc.* actually supports a plaintiff's position with respect to damages. "Under California law, in the absence of a fiduciary relationship, a plaintiff can only recover 'out-of-pocket damages [which] are directed to restoring the plaintiff to the financial position enjoyed by him prior to the fraudulent transaction.'" *Daly v. Viacom, Inc.*, 238 F.Supp.2d 1118, 1126 (N.D. Cal. 2002) (citation omitted). Here, plaintiff is seeking her out of pocket damages, which will be measured by the price she paid for each product minus the actual value of what she received. Finally, in *Decarlo v. Costco Wholesale Corporation*, 2015 WL 11822156, at *4 (S.D. Cal., 2015), the Court found that "Plaintiff's allegations fail to show there is something about the Costco-MBNR arrangement that leads consumers to pay higher prices than they would have elsewhere beyond the sole fact that eyewear and eye exams are being offered. To the contrary here, plaintiff has specifically alleged that "consumers equate 'natural' claims with healthier foods, and are generally willing to pay more for healthier foods." (Compl ¶ 14). Plaintiff also alleged that "[t]he Iced Tea Products cost more than similar products without misleading labeling, and would have cost less absent the false and/or misleading All Natural Claims." (Id. ¶ 20). At this stage of the litigation, that is all that is required. *Hinojos,* 718 F.3d at 1105 ("[Plaintiff] has done everything *Kwikset* requires to allege an economic injury under the UCL and FAL. He alleges that the advertised discounts conveyed false information about the goods he purchased, i.e., that the goods he purchased sold at a substantially higher price at Kohl's in the recent past and/or in the prevailing market. He also alleges that he would not have purchased the goods in question absent this misrepresentation. This is sufficient under *Kwikset*.")

## **CONCLUSION**

For the foregoing reasons, Tradewinds' motion should be denied in its entirety.

Dated: April 10, 2017                         Respectfully Submitted,

21

*Martin v. Tradewinds Beverage Company*, Case NO. 16-cv-09249
OPPOSITION TO MOTION TO DISMISS

1

<u>/s/ Trevor M. Flynn</u>

2

**THE LAW OFFICE OF JACK FITZGERALD, PC**

3

JACK FITZGERALD

*jack@jackfitzgeraldlaw.com*

4

TREVOR M. FLYNN

*trevor@jackfitzgeraldlaw.com*

5

MELANIE PERSINGER

*melanie@jackfitzgeraldlaw.com*

6

Hillcrest Professional Building

7

3636 Fourth Avenue, Suite 202

8

San Diego, California 92103

Phone: (619) 692-3840

9

Fax: (619) 362-9555

10

***Attorneys for Plaintiff and the Proposed Class***

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

22